```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| DIANE JOHNSON-HALL | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | CIVIL NO. 04-5450 (JBS) |
| v. | |
| JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY, | **OPINION** |
| Defendant. | |

APPEARANCES:

Lori Winkler Kesselman, Esq.
JACOBS, SCHWALBE & PETRUZZELLI, P.C.
Woodcrest Pavilion
10 Melrose Avenue, Suite 340
Cherry Hill, NJ 08003
    Attorney for Plaintiff

Christopher J. Christie
United States Attorney
    By:  Tomasina DiGrigoli
         Special Assistant U.S. Attorney
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
    Attorney for Defendant

**SIMANDLE**, District Judge:

   This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) (the "Act"), to review the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying the application of Plaintiff Diane Johnson-Hall for disability insurance benefits under Title II of the Social Security Act.

Presently before the Court is the entire administrative record and the briefing of the parties pursuant to L. Civ. R. 9.1.  This Court must determine if there was substantial evidence present to support the Administrative Law Judge's (hereinafter "ALJ") decision to deny Plaintiff's disability benefits.  For the reasons discussed herein, the Court finds no basis to remand the case for further factual analysis, and the decision of the Commissioner will be affirmed.

## I. BACKGROUND

From 1979 to 2002, Plaintiff Diane Johnson-Hall was employed as a handicap trainer, or trainer technician.  (R. at 30.)  In her capacity as a trainer, Plaintiff worked hands-on with clients and wrote reports on their progress.  (R. at 30-31.)  Additionally, Plaintiff was responsible for supervising "when it was needed."  (R. at 30.)  The onset date of Ms. Johnson-Hall's disability was November 3, 2001 when her sugar "shot up to 1800."  (R. at 29.)  On that day, Plaintiff alleges that her daughter found her in bed with her eyes rolled back and Plaintiff was subsequently rushed to the hospital where she remained in a coma for two to three weeks.  (Id.)

At some point after her hospitalization, Plaintiff attempted to return to her job as a trainer technician.  (R. at 30.)  However, after two days, Ms. Johnson-Hall permanently decided not to return to her position as a trainer due to the alleged pain

she experienced as a result of working. (Id.) Plaintiff testified that she could not work mainly due to her knee and back problems. (R. at 26.) According to one medical expert, Dr. Brad Rothkoff, Ms. Johnson-Hall is severely overweight and suffers from multiple medical problems including insulin-dependent diabetes, high blood pressure, a systolic ejection murmur, degenerative joint disease of the knees and some degree of degenerative joint disease of the back. (R. at 45.)

On June 14, 2002, Plaintiff filed an application with the Social Security Administration claiming that she was entitled to disability insurance benefits pursuant to 42 U.S.C. § 423 (d)(1)(A). (R. at 74-76.) Ms. Johnson-Hall's disability claim and request for reconsideration was later denied. (R. at 53-57; 59-61.) Plaintiff subsequently filed a request for a hearing, which the ALJ conducted on June 18, 2004. (R. at 62; 21.) Upon reviewing all the evidence, the ALJ concluded that Ms. Johnson-Hall was "not under a 'disability' as defined under the Act and therefore was not entitled to disability benefits." (R. at 11-19.) On July 30, 2004, Plaintiff appealed the ALJ's decision. (R. at 7.) The Appeals Council denied the request for review on September 7, 2004. (R. at 3-7.) Therefore, the ALJ's decision became the final decision of the Commissioner. (R. at 3.) Plaintiff then timely filed suit in this Court on November 5, 2004. (Compl. at ¶ 3.) Plaintiff now seeks entry of judgment

and reversal of the Commissioner's determination.  (Pl. Br. at 26.)

## II. DISCUSSION

A. Standard of Review

Pursuant to 42 U.S.C. § 405(g) this Court has jurisdiction to review any final decision of the Commissioner.  "[T]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The findings of fact by the Commissioner are deemed conclusive if supported by substantial evidence, and where a claim has been denied, this Court may only review the ALJ's possible failure of conforming to the applicable regulations.  Id.  Since the Appeals Council denied Plaintiff's request for review, this Court is limited to the record as it was presented to the ALJ.  Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001).

The findings of the lower court are conclusive if supported by "substantial evidence."  42 U.S.C. § 405(g).  The Supreme Court has defined "substantial evidence" as it applies to disability benefits review as "more than a mere scintilla" but evidence that a "reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 400 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

4

B.   <u>Statutory Standard for Disability Benefits Entitlement</u>

To obtain disability benefits, the claimant bears the burden of showing that he is statutorily disabled by "furnish[ing] such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."  42 U.S.C. § 423(d)(5)(A).  As described <u>supra</u>, this evidence must be "substantial" so as to support a reasonable conclusion of entitlement to disability benefits.

Generally, to qualify as "disabled", a claimant must have "the inability to do any substantial gainful activity[1] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505.  "In deciding whether [a claimant] is disabled, [the [ALJ] will always consider the medical opinions in [each] case record together with the rest of the relevant evidence."  20 C.F.R. § 15.27(b).  A five-part sequential test has been developed to ensure the accuracy of disability determinations.

> The first two steps involve threshold determinations that the claimant is not presently working, and has an impairment which is of the required duration and which significantly limits his ability to work.  In the third

---

[1]Substantial gainful work in the national economy is defined as those positions that exist in large numbers in the region where the claimant lives or in several regions of the country.  42 U.S.C. § 423(d)(2)(A).

> step, the medical evidence of the claimant's impairment
> is compared to a list of impairments presumed severe
> enough to preclude any gainful work.  If the claimant's
> impairment matches or is "equal" to one of the listed
> impairments, see 20 C.F.R. Pt. 404, Subpt. P, App. 1,
> he qualifies for benefits without further inquiry.  If
> the claimant cannot qualify under the listings, the
> analysis proceeds to the fourth and fifth steps.  At
> these steps, the inquiry is whether the claimant can do
> his own past work or any other work that exists in the
> national economy, in view of his age, education, and
> work experience.  If the claimant cannot do his past
> work or other work, he qualifies for benefits.

Mason v. Shalala, 994 F.2d 1058, 1063 (3d Cir. 1993) (quoting Sullivan v. Zebley, 493 U.S. 521, 525 (1990)); 20 C.F.R. § 404.1520.  Once the claimant proves that he is unable to perform his former job, the burden then shifts to the Commissioner to prove that the claimant can perform some other substantial gainful employment.  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987) (citing Chicager v. Califano, 574 F.2d 161 (3d Cir. 1978)).

C.   Severity of Plaintiff's Impairments

Here, the first step of the test is easily satisfied because it is undisputed that Plaintiff has not engaged in substantial gainful activity since November 3, 2001.  (R. at 12.)  In applying the second step - whether Plaintiff's impairments are severe - the ALJ conceded that the combination of impairments suffered by Ms. Johnson-Hall were severe.  However, the ALJ further noted that the impairments were not severe enough to "meet or medically equal, either singly or in combination" an impairment described in 20 C.F.R. § 404, Subpt. P, App. 1.  (R.

at 13.)  Ms. Johnson-Hall does not challenge the ALJ's findings at this third step.  On appeal, the burden is on the claimant to show that her impairments match or are equal to a listing.  See Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 n.2 (3d Cir. 2000).  Since, Plaintiff fails to assert that her impairments meet or equal a listed impairment, and the ALJ concluded that Plaintiff's impairments do not meet or equal a listing under the Act, Plaintiff cannot be found disabled at this stage in the determination.

D.   Plaintiff's Residual Functional Capacity

Since Ms. Johnson-Hall does not qualify for disability benefits at the third step, the analysis next considers whether Plaintiff retains the residual functional capacity ("RFC") to perform past relevant work as she actually performed it.  RFC is an assessment of a claimant's "ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."[2]  SSR 96-8p.  In determining the RFC, related symptoms, such as a pain, can be taken into consideration.  Id.  When assessing a claimant's RFC, one's "ability to meet the physical, mental, sensory, and other requirements of work" are taken into consideration.  20 CFR § 404.1545(4).  The RFC is first applied in step four to decide whether a claimant can

---

[2]"A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p.

return to past relevant work.  20 CFR § 404.1545(5)(i).  The same RFC assessment is then applied at step five to determine whether a claimant can perform other work in the national economy.  20 CFR § 404.1545 (5)(ii).

Here, the ALJ determined that Plaintiff retained the following RFC: "she can lift, carry, push, and pull up to 10 pounds at a time and small objects frequently; walk or stand for up to two hours per workday and sit for up to six hours per workday so long as she has the option to periodically sit or stand at will.  She must work in a temperate environment."  (R. at 15.)  The ALJ reached this conclusion based partially on the medical opinion and RFC assessment of Dr. Rothkopf, a board certified cardiologist and internist.  (R. at 15.)

In considering Plaintiff's related symptoms, such as pain, the ALJ noted that Ms. Johnson-Hall was not prescribed medications for severe pain, referred to a pain program, physical therapist or occupational therapist, nor had a doctor suggested that Plaintiff undergo surgery.  (R. at 15.)  Furthermore, the ALJ noted that Plaintiff was able to "cook with rest periods, occasionally shop, clean the kitchen, drive a car, help clean the house, do laundry, wash dishes, watch television, pay bills and attend church."  (Id.)

Additionally, Ms. Johnson-Hall argues that the ALJ failed to take into consideration her obesity when evaluating her RFC.  (R.

8

at 23.)  In evaluating the severity of Plaintiff's limitations, the ALJ noted that her "morbid obesity" most likely exacerbated her knee and leg problems and therefore was a severe impairment. (R. at 14.)  However, the ALJ concluded that it did not equal a listing.  (Id.)  According to Social Security Ruling 00-3p, "there is no listing for obesity" and therefore, "obesity 'meets' the requirements of a listing if [a claimant] has another impairment that, by itself meets the requirement for a listing." Since Plaintiff does not suffer from an impairment that meets a listing, she does not fall within this category.  A listing can also be met if there is an impairment in combination with obesity that meets the requirements of a listings.  SSR 00-3p.  Under the rules, the Commissioner is required to evaluate obesity in combination with other impairments based on the case record  Id. Here, the record indicates that Ms. Johnson-Hall was able to perform daily activities and was not instructed by her treating physician to use a cane or leg brace.  (R. at 15.)  Therefore, the ALJ correctly relied on Plaintiff's entire medical record in reaching its conclusion that Plaintiff's obesity, in combination with other impairments, did not meet a listing under the Act.

    The RFC determined by the ALJ is then applied in the fourth step of the analysis which is a "function-by-function assessment based upon all the relevant evidence of an individual's ability to do work-related activities."  SSR 96-8p.  Here, the ALJ

concluded that Ms. Johnson-Hall is unable to perform any of her past relevant work as a trainer technician.  (R. at 18.)  The ALJ reached this conclusion based on the testimony of the vocational expert who noted that Plaintiff's past relevant work was "semiskilled and light."  (R. at 16.)  There is substantial evidence, including testimony from Plaintiff's treating physician, medical specialists and a vocational expert, to support the ALJ's conclusion that Ms. Johnson-Hall cannot perform her past relevant work.  Indeed, in Plaintiff's Memorandum of Law, Ms. Johnson-Hall agrees with the ALJ's determination at this step.  (R. at 21-22.)  Therefore the burden shifts to the Commissioner to prove that Ms. Johnson-Hall can perform some other substantial gainful employment.  See Kangas, 823 F.2d at 777 (citing Chicager, 574 F.2d 161).

   The final step in assessing whether an individual is disabled under the Act is an assessment of an individual's RFC in combination with one's "age, education, and past work experience" to determine whether the individual can work in the national economy.  20 C.F.R. § 404.1520(f).  At this step, the RFC "must be expressed in terms of . . . exertional categories."  SSR 96-8p.  Exertional capacity "addresses an individual's limitations and restrictions" and "defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling."  Id.

10

Here, the ALJ adjudged that based on Ms. Johnson-Hall's RFC, she is capable of performing "a significant range of sedentary work." (R. at 16.) Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like . . . files, ledgers and small tools." 20 C.F.R. § 404. 1567(a). While a job defined as sedentary often involves sitting, a certain amount of walking and standing may occasionally be required. Id. Plaintiff objects to the ALJ's sedentary assessment on three grounds.

First, Plaintiff argues that the RFC assessments completed by her treating physician, Dr. Fichman, should have been given "controlling weight" and that the ALJ failed to explain how much weight was given to the treating physician's opinion. (Pl. Br. at 11; 17.) Under 20 C.F.R. § 404.1527, "generally. . . more weight [is given] to opinions from [the claimant's] treating sources." Further, "the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" an opinion is given. 20 C.F.R. § 404.1527. Additionally, the ALJ will "give good reasons in [the] notice of determination" for the weight given to a treating source's opinion. Id. However, the ALJ can give more weight to "the opinion of a specialist about medical issues related to his or her area of specialization." Id.

11

Here, the ALJ heavily relies on Plaintiff's treating physician's records in determining whether her limitations are severe. Specifically, Dr. Fichman's records and subsequent laboratory findings, when conducted, were discussed by the ALJ in conjunction with each of Plaintiff's ailments. (R. at 13-14.) The ALJ did not afford controlling weight to Dr. Fichman's assertions that Plaintiff was depressed and suffered from anxiety because these claims were not supported by medical testing or substantial signs of an impairment. (R. at 14.) It is well within the discretion of the ALJ to only provide controlling weight to medical opinions that are "well supported" by "medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p. Additionally, the ALJ dismissed Plaintiff's unsupported assertions that "her medications make her sleepy." (R. at 14.) Since Dr. Fichman's records were extensively discussed by the ALJ in its discussion of Plaintiff's limitations, the ALJ properly gave due weight to Ms. Johnson-Hall's treating physician during this step of the analysis.

The ALJ is required to assess Plaintiff's RFC "based on all of the relevant medical and other evidence." 20 CFR § 404.1545(a)(3). Although the ALJ afforded less weight to Dr. Fichman's opinion during its evaluation of Plaintiff's RFC, it was well within the ALJ's discretion to do so. Under Social Security Ruling 96-2p, a treating physician's opinion cannot be

12

entitled to controlling weight if it is not supported by "medically acceptable" clinical and laboratory diagnostic techniques.  Furthermore, more weight is generally given to a "specialist about medical issues related to his or her speciality area than to the opinion of a source who is not a specialist." 20 C.F.R. § 404 1527.

 Here, the ALJ took notice of Dr. Fichman's statements that Plaintiff was unable to work.  (R. at 15.)  However, the ALJ further noted that Dr. Fichman was not a specialist and therefore, afforded greater weight to the medical opinions of specialists, including Dr. Rothkopf, who opined that Ms. Johnson-Hall could "perform sedentary work in a temperature environment as long as she could periodically sit and stand."  (Id.) Furthermore, the ALJ noted that Plaintiff was able to perform a significant amount of daily activity including cooking, shopping and cleaning.  (Id.)  Since the findings of the ALJ are supported by substantial evidence, and the ALJ properly followed the applicable guidelines in determining the weight of Dr. Fichman's medical opinions, Plaintiff's argument that the ALJ did not give the appropriate value to the treating physician's records fails.

 Second, Plaintiff contends that the ALJ failed to properly apply Social Security Rulings 83-10 and 83-12.  Specifically, Ms. Johnson-Hall claims that the ALJ did not consider Social Security Ruling 83-12, which provides that an individual who alternates

13

between periods of sitting and standing is not capable of performing sedentary work or light work.  (Pl. Br. at 17-18.) While there are some jobs in the national economy that allow an individual to sit and stand with a degree of choice, "most jobs have ongoing work processes which demand that a worker be in a certain place or posture."  SSR 83-12.  Further, unskilled positions are "particularly structured so that a person cannot ordinarily sit or stand."  Id.  Therefore, a vocational expert should be called upon to "clarify the implications for the occupational base."  Id.

   Here, the vocational expert, Bruce Martin, considered Plaintiff's sit/stand option when determining if there were jobs in the national economy that Plaintiff could perform.  (R. at 48.)  During Mr. Martin's testimony, the ALJ explicitly asked him if there were any jobs in the regional or national economy that Plaintiff could perform based on Plaitiff's RFC and her age, education and past relevant work experience.  (R. at 46.)  Based on this hypothetical question from the ALJ, Mr. Martin testified that the representative sample of jobs where Plaintiff could work included an information clerk, a cashier and a record clerk.  (R. at 48-49.)  Since there is substantial evidence supporting the hypothetical question, the ALJ may rely on the answer proffered by the vocational expert to demonstrate that there are jobs in

14

the national economy which Ms. Johnson-Hall can perform.  See Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999).

Lastly, Plaintiff argues that the ALJ failed to properly determine her RFC and therefore, the Commissioner did not meet the agency's burden of proving that there are jobs in the national economy that Plaintiff can perform.  A claimant's RFC is only evaluated prior to step four and the same RFC determination is applied at step five.  20 C.F.R. § 404.1545.  Therefore, Plaintiff's assertion that the RFC should be reevaluated at the final step of the disability determination is misplaced.

Furthermore, as noted supra, the ALJ's determination of Plaintiff's RFC was based on substantial evidence and properly evaluated Plaintiff's related symptoms, such as pain and obesity. The ALJ satisfied its burden at the final step by noting that there are a "significant number of jobs in the national economy that [Plaintiff] can perform."  (R. at 18.)  These jobs include an "information clerk (1,200 jobs locally and 55,000 nationally), a cashier (11,000 jobs locally and 500,000 nationally), and a records clerk (800 jobs locally and 37,000 nationally)."  (Id.) In light of the substantial evidence and the ability of Ms. Johnson-Hall to obtain sedentary employment in her region, it is a reasonable and adequate conclusion that she is not disabled and there is no good cause shown to reverse.  The Court finds that

15

the Commissioner's decision is supported by substantial evidence in the record and is entitled to affirmance.

## **CONCLUSION**

     For the above stated reasons, the Commissioner's decision will be affirmed and the accompanying Order will be entered.

**July 27, 2005**          **s/ Jerome B. Simandle**
Date          JEROME B. SIMANDLE
        United States District Judge